# ORIGINAL

# In the United States Court of Federal Claims

### No. 13-3T

### (Filed July 12, 2013)

FILED

JUL 1 2 2013

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
RALEIGH W. HALL & MARGARET E.        *
HALL., PRO SE                        *
                                     *
            Plaintiffs,              *
                                     *
      v.                             *
                                     *
THE UNITED STATES,                   *
                                     *
            Defendant.               *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Raleigh W. Hall* and *Margaret E. Hall*, pro se, Jamaica, New York.

*David Raymond House*, Department of Justice, with whom was *David I. Pincus, Mary A. Abate* and *Assistant Attorney General Kathryn M. Keneally*, for Defendant.

### OPINION & ORDER

*Futey*, **Judge**.

This case is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction, filed March 20, 2013. Plaintiffs responded on May 15, 2013 with a cross-motion for summary judgment, and defendant responded on June 6, 2013. Plaintiffs filed their reply on July 8, 2013. Defendant's motion seeks dismissal of plaintiffs' complaint on statute of limitations grounds, and plaintiffs seek summary judgment in their favor.

This case is a *pro se* tax case, directly related to *Hall v. United States*, 99 Fed. Cl. 617 (2011), in which plaintiffs filed amended returns and sought to apply several years of net operating losses ("NOLs")[1] forward *en masse* to their taxable income in 2003. Arguing that taxpayers must follow the precise rules of the Internal Revenue Code's ("I.R.C.") § 172 (2012) when deducting NOLs by applying such losses first as a carryback unless a timely waiver is elected, the

---

[1] Net operating losses are generally defined by the Code as the excess of deductions over gross income. I.R.C. § 172.

Government moved for summary judgment. *Hall*, 99 Fed. Cl. at 619-20. The Court granted the Government's motion on August 9, 2011, entering judgment on the same day, and dismissing the complaint. *Id.* at 622.

Plaintiffs filed new claims for refunds for taxable years 1992, 1995, and 1997 on October 7, 2011, and when those were denied, brought this complaint on January 2, 2013. Compl. 3. Plaintiffs maintain that they are entitled to refunds by invoking sections 1311-1314 of the Internal Revenue Code, which under certain circumstances lift the bar of the statute of limitations on either an assessment by the Commissioner, or a claim for refund to the taxpayer. *Id.*

I.    Background

Mr. Raleigh Hall and wife, Margaret Hall are individual taxpayers and sole shareholders of R.W. Hall General Contractors, Inc., an S corporation[2] organized under the laws of New York. Compl. 1.

In *Hall v. United States*, 99 Fed. Cl. 617 (2011), plaintiffs sought to apply several years of accumulated NOLs forward to taxable year 2003. They had suffered losses in taxable years 1988, 1989, 1990, 1991, 1996, and 2001, and reported taxable income in 1992, 1993, 1995, 1997, 1998, 2000, and 2003. *Hall*, 99 Fed. Cl. at 619. In April 2007, they filed amended tax returns for 1988, 1989, 1990, 1991, 1993, 1996, and 2001, and sought to reduce their 2003 taxable income by applying $721,344 in NOLs generated since 1988 directly toward 2003 taxable income, resulting in a refund. *Id.* The IRS denied the claim on March 19, 2010, and plaintiffs filed suit in this Court on May 11, 2010. *Id.* In its opinion on the Government's motion for summary judgment, the Court discussed the NOL deduction, and the Code's mandatory operation of NOL carrybacks and carryovers, which requires an NOL to be carried back first to each of the two taxable years preceding the year of the loss, and only then as a carryover to each of the twenty taxable years following the year of the loss. *Id.* at 620 (citing I.R.C. § 172(b)(1)(A)). The NOL must be carried back to the earliest taxable year possible, and any remaining portion not absorbed by the income in that year may be carried forward. *Id.* at 620-21 (citing I.R.C. § 172(b)(2)). The Court also noted that the Code provides a taxpayer with the option to waive the carryback period, and rather apply NOLs forward to subsequent years.[3] *Id.* at 621 (citing § 172(b)(3)). A taxpayer must affirmatively elect to take this waiver, which "shall

---

[2] An S Corporation is a small business corporation for which an election has been made under section 1362(a) for the taxable year. I.R.C. § 1361(a)(1).

[3] For example, if a taxpayer sustained a NOL in 1995, the amount would first be carried back and applied to the earliest year possible, 1993. If after applying the NOL to taxable income for that year any portion remained unabsorbed, this would next be applied to 1994. Any leftover amount could then be applied each year forward, for up to twenty years, starting with taxable year 1996. If the taxpayer in this example elected to waive the carryback period – which the taxpayer would have to do by April 15, 1996 – the NOL would first be applied to taxable year 1996. I.R.C. § 172.

be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect." *Id.* (citing § 172(b)(3)). Once elected, the waiver is irrevocable. *Id.* The Court found that the rules for allocating NOLs must be strictly followed, and since plaintiffs did not timely elect to waive the carryback periods for the NOLs they suffered from 1988 to 2001, they could not retroactively do so. *Id.* Rather, any waiver was required to have been made "by the due date" of each relevant taxable year. *Id.* Finally, the Court dismissed plaintiffs' argument that § 172 discriminates in favor of large, wealthier taxpayers, and that waivers generally should not be required. *Id.* at 622.

Plaintiffs' current complaint seeks refunds for tax years 1992, 1995, and 1997, for a total of $237,813. Compl. 1. The Halls assert that they paid $808,942 in taxes for those years, through a combination of payroll withholdings and payments made with respective returns, and the Internal Revenue Service ("IRS") wrongfully denied their claims for refunds. *Id.* at 2. Plaintiffs state that claims for refund were filed with the Internal Revenue Service Center on October 7, 2011. *Id.* at 3. The IRS notices of disallowance state the claims were received October 14, 2011. Compl. Ex. B.

For taxable year 1992, plaintiffs filed their original return on August 16, 1993 and made a subsequent payment on October 4, 1993. Def.'s Ex. 1. Plaintiffs sought to amend their return to carry over NOLs from 1988, 1989, 1990, and 1991. Compl. Ex. A.

For taxable year 1995, plaintiffs filed their return October 21, 1996 and made a subsequent payment January 23, 1997. Def.'s Ex. 2. Plaintiffs sought to carry over NOLs from 1992 and 1993, and carry back NOLs from 1996. Compl. Ex. A.

For taxable year 1997, plaintiffs filed their return on April 15, 1998 with a payment. Plaintiffs sought to apply a carryback loss from 2001. Compl. Ex. A.

The IRS denied all of plaintiffs' claims in formal letters dated November 11, 2011. Compl. Ex. B. Their appeals were also denied, in letters dated December 1, 2012. Compl. Ex. C. In the current case, plaintiffs claim they are entitled refunds based on § 172 of the Internal Revenue Code, pursuant to a decision having been rendered by this Court in *Hall v. United States*, 99 Fed. Cl. 617 (2011), and that "these claims were filed under Sections 1311, 1312, 1313 & 1314 of the Internal Revenue Code." Compl. 3.

II.     Discussion

Defendant seeks to dismiss the complaint for lack of jurisdiction pursuant to RCFC 12(b)(1).

A *pro se* complaint is to be liberally construed, and plaintiffs' filings "must be held to 'less stringent standards than formal pleadings drafted by lawyers[.]'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). While leniency will be extended, *pro se* plaintiffs are not entitled to relaxation vis-à-vis the jurisdiction requirement. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[L]eniency with respect to mere formalities should be extended to a *pro se* party . . . [however] a court may not similarly take a liberal view of th[e] jurisdictional requirement and set a different rule for *pro se* litigants only."); *Demes v. United States*, 52 Fed. Cl. 365, 372 n.9 (2002) ("*pro se* status does not relieve plaintiffs of their jurisdictional burden"). Before proceeding to the merits, a court must satisfy itself that it has jurisdiction over a matter. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction . . . by a preponderance of the evidence." *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Because it is a sovereign, the United States is only subject to suit to the extent it has consented to be sued. *See United States v. Testan*, 424 U.S. 392, 399 (1976). Congress has provided such consent with regard to refund of federal tax payments. 28 U.S.C. § 1346(a)(1) (2012); *Nasharr v. United States*, 105 Fed. Cl. 114, 118 (2012). Accordingly, the Court of Federal Claims and the district courts have original, concurrent jurisdiction with respect to "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1); *Roberts v. United States*, 242 F.3d 1065, 1067 (Fed. Cir. 2001).

This waiver of sovereign immunity is construed narrowly in the context of tax refund suits, and "jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code, including 26 U.S.C. § 7422." *Waltner v. United States*, 679 F.3d 1329, 1332 (Fed. Cir. 2012).The court's jurisdiction is thus subject to the administrative refund scheme that Congress established in the Code. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("The Internal Revenue Code specifies that before [bringing an action for a tax refund], the taxpayer must comply with the tax refund scheme established in the Code.") (citing *United States v. Dalm*, 494 U.S. 596, 609-10 (1990)). This includes compliance with the statutorily prescribed timing requirement for filing a refund claim. *Dalm*, 494 U.S. at 609-10; *McAdams v. United States*, 07-164T, 2008 WL 654271, at *2 (Fed. Cl. Feb. 1, 2008).

Section 7422(a) of the Internal Revenue Code states:

> [n]o suit or proceeding shall be maintained in any court for the recovery of [1] any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or [2] of any penalty claimed to have been collected without authority, or [3] of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with [the IRS].

I.R.C. § 7422(a). Thus to maintain jurisdiction, a party seeking to recover any internal-revenue tax, penalty, or sum from the United States must timely pursue and exhaust its administrative remedies pursuant to the IRS's regulations prior to filing a complaint in federal court. *Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d 1317, 1324 (Fed. Cir. 2010).

### A. Plaintiffs' Claims Are Barred by the Statute of Limitations

"Statutes of limitations are an indispensable element of practical tax administration, and both hardships to taxpayers and losses of revenue may and do result from their application in the field of taxation." *Olin Mathieson Chem. Corp. v. United States*, 265 F.2d 293, 296 (7th Cir. 1959). The purpose of a statute of limitations is to protect against stale claims, *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71 (1933), and the limitations provisions of the Code "introduce . . . finality principles that horizontally limit, to a prescribed set of years, the ability of taxpayers and government alike to modify the computation of income." *Schortmann v. United States*, 92 Fed. Cl. 154, 155 (2010).

The typical statute of limitations for filing a tax refund claim is three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later. I.R.C. § 6511(a). Where a taxpayer does not file a refund claim within the period defined in § 6511(a), the court must find that it lacks jurisdiction. *Clintwood*, 553 U.S. at 8–9. In the context of net operating loss or capital loss carrybacks, however, Congress enacted a special provision, § 6511(d)(2)(A), stating that the claim for refund must be filed within three years of the date on which the return was due to be filed (including extensions) "for the taxable year of the net operating loss . . . which results in such carryback[.]" I.R.C. § 6511(d)(2)(A); *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1329-30 (Fed. Cir. 2007); *Glenwood Cooperative, Inc. v. United States*, 32 Fed. Cl. 568, 571 (1995) ("[The statutory reference] refers to . . . when the loss was actually incurred, not to some later or earlier tax year to which the loss might be carried forward or back."), *aff'd*, 73 F.3d 344, 345 (Fed. Cir. 1996).

In their request for a refund for the most recent year, 1997, plaintiffs seek to carryback NOLs incurred in 2001. Pursuant to § 6511(d)(2)(A), a claim for refund for these NOLs must be filed within three years of the date on which the return was due to be filed for the taxable year of the NOL. As plaintiffs' tax return for 2001 was due April 15, 2002,[4] the Government is correct that the claim for refund must have been filed by April 15, 2005. Plaintiffs filed their claims on October 7, 2011 – over six years past the applicable statute of limitations. Similarly, for the 1996 carryback to be applied to 1995 – three years from the return due date of April 15, 1997 – would place the closing of the limitations period at April 15, 2000.

For claims seeking to carry over NOLs from 1992 and 1993 to the 1995 taxable year, the general time constraints of § 6511(a) apply, requiring refund claims within three years of the filing of the return – in plaintiffs' case, by October 21, 1999. Likewise, the loss carryovers plaintiffs seek to apply to taxable year 1992 require the claims to have been made by August 16, 1996 – three years from the date plaintiffs filed their 1992 tax return. The October 2011 claims for refund fall far outside the statutory limits permitted by the Code, and deprive this Court of jurisdiction. *See Dalm*, 494 U.S. at 609-10. Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. *See Rosenman v. United States*, 323 U.S. 658, 661 (1945). "Remedies for resulting inequities are to be provided by Congress, not the courts." *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947).

B. No Circumstance of Adjustment Exists to Implicate the Mitigation Provisions

In their complaint and motion for summary judgment, plaintiffs suggest that their claims for refunds were filed under I.R.C. §§ 1311, 1312, 1313, and 1314, which mitigate operation of the statute of limitations. Pl.'s Mot. for Summ. J. 2. Sections 1311-1315 are commonly referred to as the "mitigation sections" and when applicable, work to reopen a taxable year closed by the statute of limitations. *See Benenson v. United States*, 385 F.2d 26, 29-30 (2d Cir. 1967); *Glatt v. United States*, 470 F.2d 596, 598 (Ct. Cl. 1972). In specified circumstances, the mitigation provisions provide "certain rules for the correction of the effect of an erroneous treatment of an item in a taxable year which is closed by the statute of limitations . . . in cases where . . . it has been determined that there was an erroneous treatment of such item in the closed year." Treas. Reg. § 1.1311(a)-1. For example, "if the taxpayer claims that a deduction should be allowed for a particular year and it is ultimately determined that the deduction was not allowable in that year, then the taxpayer may take the deduction in the proper year if that year was not closed at the time the taxpayer first claimed a deduction." *Id.* The statute aims to "produce the effect of attributing income or

---

[4] "[R]eturns made on the basis of the calendar year shall be filed on or before the 15[th] day of April following the close of the calendar year . . . ." I.R.C. § 6072.

deductions to the right year and the right taxpayer" and when a determination demonstrates a prior inconsistent position was erroneous, the disputed item upon the prior year's tax is recomputed to ascertain the amount of the adjustment, to produce the same result as if the error had never been committed. Note, *Sections 1311-15 of the Internal Revenue Code: Some Problems in Administration*, 72 Harv. L. Rev. 1536, 1538 (1959) (quoting S. Rep. No. 75-1567, at 50 (1938)).

"While these mitigation provisions are remedial and should be given a liberal interpretation, the party invoking them has the burden of showing that mitigation is permitted." *Elmes v. Comm'r & United States Virgin Islands*, 2011-106, 2012 WL 4462658, at *6 (D.V.I. Sept. 27, 2012) (citing *Koss v. United States*, 69 F.3d 705, 709 (3d Cir. 2005)); *Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir. 1987) ("[The mitigation provisions] do not [] constitute general equitable exceptions to statutory limitations periods, and the party seeking to invoke them bears the burden of demonstrating that their requirements have been satisfied."). The statute also does "not purport to relieve against all inequities occasioned by the statute of limitations[,]" *United States v. Rushlight*, 291 F.2d 508, 514 (9th Cir. 1961), and its provisions must be strictly construed. *Schwartz v. United States*, 67 F.3d 838, 840 (9th Cir. 1995); *Comm'r v. Estate of Goldstein*, 340 F.2d 24, 27 (2d Cir. 1965).

In order for the mitigation provisions to apply, plaintiffs must meet three threshold requirements: (1) there must be "a determination" as defined by I.R.C. § 1313(a)(1)-(4); (2) the determination must fall within one of the "circumstances of adjustment" described in 26 U.S.C. § 1312(1)-(7); and (3) depending on which circumstance of adjustment is found, either an inconsistent position must have been maintained by the party against whom the mitigation will operate, 26 U.S.C. § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position, 26 U.S.C. § 1311(b)(2). I.R.C. § 1311(a); *Haas v. United States*, 107 Fed. Cl. 1, 6 (2012); *Last v. United States*, 37 Fed. Cl. 1, 7-8 (1996) (citing *Longiotti*, 819 F.2d at 68).

A "determination" is defined as "a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final." I.R.C. § 1313(a)(1); *Olin Mathieson Chem. Corp.*, 265 F.2d at 297 (district court's final judgment that taxpayer's loss was a long term capital loss was a "determination" for mitigation provisions). Here, plaintiffs maintain the decision of this Court in *Hall*, 99 Fed. Cl. 617, is such a determination. Final judgments of courts sitting in competent jurisdiction fit the definition of "determination." In *Hall*, jurisdiction was proper pursuant to § 1346(a)(1). Therefore, plaintiffs meet this requirement.

For the second requirement, plaintiffs cite two circumstances of adjustment in their case, first § 1312(6), and later § 1312(3)(A). Compl. 2-3; Pl.'s

Mot for Summ. J. 2. Section 1312(6) authorizes the circumstances of adjustment provided in § 1311 for:

> (6) Correlative deductions and credits for certain related corporations.--The determination allows or disallows a deduction (including a credit) in computing the taxable income (or, as the case may be, net income, normal tax net income, or surtax net income) of a corporation, and a correlative deduction or credit has been erroneously allowed, omitted, or disallowed, as the case may be, in respect of a related taxpayer described in section 1313(c)(7).

I.R.C. § 1312(6). In their subsequent pleadings,[5] plaintiffs suggest that § 1312(3)(A) should apply to their case as well, which provides a circumstance of adjustment for "[d]ouble exclusion of an item of gross income" in which the determination "requires the exclusion from gross income of an item which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer[.]" I.R.C. § 1312(3)(A). Neither of these is applicable to plaintiffs' situation, and they do not accurately characterize the Court's determination in *Hall*, 99 Fed. Cl. 617, which disallowed a deduction due to plaintiffs' failure to follow the precise rules of § 172.

Plaintiffs argue that the IRS's – and later this Court's – determination disallowing their NOL deductions "required the exclusion from gross income [of] these same losses, which, by the error of omission, were already excluded from [plaintiffs'] tax returns – therefore a double exclusion." Pl.'s Resp. to Def.'s Reply 2, ECF No. 17. Simply put, plaintiffs are alleging that the NOLs *themselves* were the excluded item. *Id.* at 3. The language of the Code does not support this result. Gross income is "all income from whatever source derived" and the illustrative list that follows includes only items that add wealth, not negative elements such as deductions. *See* I.R.C. § 61(a); *compare Schwartz*, 67 F.3d at 840 (plaintiffs could not avail themselves of mitigation provisions because their ordinary loss was not "an item erroneously included in gross income."), *Gardiner v. United States*, 536 F.2d 903, 906 (10th Cir. 1976) ("The meaning of an *item* of gross income . . . is restricted to positive items and does not include negative elements such as deductions [] the omission of which results in increased taxes.")

---

[5] The Government submits that the doctrine of variance prohibits plaintiffs from changing the circumstance of adjustment relied upon from § 1312(6) to § 1312(3)(A), because it was not originally raised in the claims for refund. Def.'s Resp. to Pl.'s Mot. for Summ. J. 4-5. Asserting that the "factual bases and legal theories as between the two are vastly different" this change in provisions would take away the IRS's notice as to the claim and specific facts upon which it is predicated. *Id.* at 5. Because the Court has decided to grant defendant's motion on other grounds, it declines to explore whether the IRS was not sufficiently apprised to respond to a different circumstance of adjustment in § 1312 such that the doctrine of variance would bar plaintiffs' argument.

(emphasis in original), *and Milburn v. United States*, 947 F. Supp. 1015, 1020 (W.D. Tex. 1996) (agreeing with defendant that "[i]n the absence of a special definition of gross income under the mitigation provisions . . . [p]laintiffs' failure to include a deduction for interest paid . . . although affecting gross income, is not an *item* of gross income." ) (emphasis in original), *with Kappel's Estate v. Comm'r*, 615 F.2d 91, 93-97 (3d Cir. 1980) (cash surrender value of annuity policies is an item to be included in gross income). Therefore plaintiffs' case does not fall under the circumstance of adjustment in § 1312(3)(A). Nor does it implicate correlative deductions for related corporations, which plaintiffs earlier suggested under § 1312(6).

Construing the pleadings in the light most favorable to plaintiffs, the only circumstance of adjustment that could possibly apply to their situation would be § 1312(4), which refers to double disallowance of a deduction or credit.[6] Section 1312(4) permits a circumstance of adjustment in a situation where "[t]he determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer." I.R.C. § 1312(4); Treas. Reg. § 1.1312-4(a); *Last*, 37 Fed. at 8. In essence, plaintiffs' argument would be that the decision of the Court to disallow their deduction of the combined NOLs in 2003 was a "determination which disallowed a deduction which should have been allowed to, but was not allowed to, the taxpayer for another taxable year." *See Kuehn v. United States*, 480 F.2d 1319, 1322 (Ct. Cl. 1973). This position would contend that because the deduction was disallowed in 2003, it should have been allowed for earlier years, and that section 1312(4) allows an adjustment to be made to the prior years even though closed at the time the 2003 deduction was disallowed. *Id.* This mitigation of the statute of limitations – for a taxpayer who does not act to claim his NOLs – is not the double tax situation that mitigation provisions aim to resolve. *See Longiotti v. United States*, 635 F. Supp. at 842 (M.D.N.C. 1986) ("While the bar of the statute of limitations is harsh, the court cannot conclude that the inability to carry back the NOLs operates as a double tax to engage the mitigation provisions."), *aff'd*, *Longiotti*, 819 F.2d at 65. Therefore plaintiffs fail to establish the second requirement of a circumstance of adjustment under § 1312.

Plaintiffs also do not meet the third requirement set out in § 1311(b)(2)(B). As the Government submits, when the circumstance of adjustment is described by section 1312(4), section 1311(b)(2)(B) requires that, at the time the taxpayer first maintains to the Service, in writing, that he is entitled to the deduction that is ultimately denied, the deduction not be barred for the proper year. I.R.C. § 1311(b)(2)(B); *see Esterbrook Pen Co. v. United States*, 6

---

[6] The existence of a separate provision devoted to double disallowed deductions further supports the Court's conclusion *supra* that plaintiffs' NOLs cannot be classified as exclusions to gross income. *See Kappel's Estate*, 615 F.2d at 97 ("Reading the several interrelated provisions . . . gives to each an independent significance which is entirely consistent with the policies of mitigation provisions.").

A.F.T.R.2d 5123 (D.N.J. 1960) ("[§ 1311(b)(2)(B)] is satisfied because plaintiff had originally maintained on its 1952 return that it was entitled to the deductions in issue for that year, at which time a refund for 1953 was not barred."). Section 1.1311(b)(2)(b) of the regulations provides in relevant part, that the taxpayer will be considered to have first maintained in writing before the Commissioner or the Tax Court that he was entitled to such deduction or credit when he first formally asserts his right to such deduction or credit as, for example, in a return. Treas. Reg. § 1.1311(b)-2. Here, plaintiffs first maintained their position – that they were entitled to the aggregated NOLs – through a claim for refund in their 2003 return filed in April 2007, prior to this Court's consideration in *Hall*, 99 Fed. Cl. 617. As of that date, refunds for taxable years 1992, 1995, and 1997 were already time-barred. Plaintiffs therefore have not met all three requirements of the mitigation provisions, and are not eligible to reopen the statute of limitations. *See* I.R.C. § 1311(b)(2)(B).

III.     Conclusion

For these reasons, defendant's motion to dismiss is GRANTED, and plaintiffs' motion for summary judgment is DENIED. The Clerk is directed to dismiss the complaint with prejudice. No costs.

IT IS SO ORDERED.

**BOHDAN A. FUTEY**
**Judge**